IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:08cv363

| | |
|---|---|
| PENNSYLVANIA NATIONAL MUTUAL CASUALTY INSURANCE COMPANY, )<br>)<br>)<br>)<br>Plaintiff, )<br>)<br>Vs. )<br>)<br>CARRIAGE PARK ASSOCIATES, LLC; CPA REALTY CORPORATION; GREG YOUSE, individually; CAROLINE R. ANDERSON; ED and FERN JUTRAS; GEORGE and BARBARA GUENTHER; LESLIE and JANICE CHEATLE; MARY and JAMES WOHLGEMUTH; and RAYMOND and PENELOPE GAMBLE, )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>Defendants. )<br>_____ ) | MEMORANDUM AND RECOMMENDATION |

**THIS MATTER** is before the motions of the respective defendants to dismiss this action pursuant to Rules 12(b)(1), (2), & (6) and the court's discretionary authority under 28, United States Code, Section 2201 to decline to exercise jurisdiction over a declaratory judgment action.[1] Plaintiff has timely filed a response

---

[1] The motions to dismiss are contained in the Answers (docket entries ## 5&8) and supported by separate memoranda of law, which fully complies with

1

and the moving defendants have not filed replies or given the court notice of their intent not to file replies within the time provided. See L.Cv.R. 7.1(E). It appearing that the motions to dismiss are now ripe for disposition, the undersigned enters the following findings, conclusions, and recommendation.

**FINDINGS AND CONCLUSIONS**

**I.     Background**

Plaintiff brings this declaratory judgment action under 28, United States Code, Section 2201. Plaintiff seeks a declaration that it has no duty to defend or to indemnify defendants Carriage Park Associates, LLC, CPA Realty Corporation, and Greg Youse, individually (hereinafter the "Carriage Park defendants"), in an action now pending in the North Carolina General Court of Justice, Henderson County, Superior Court Division. The other defendants in this action - - who have also moved to dismiss - - are the plaintiffs in the Henderson County proceeding and will be referred to hereinafter as the town home owners.

In the Henderson County action, it is alleged the town home owners purchased lots from the Carriage Park defendants and then contracted with Estate Homes of North Carolina, Inc. (hereinafter "Estate Homes"), to build single family town home residences. In that suit, the town home owners assert claims for negligence, breach

---

L.Cv.R. 7.1.

of implied warranty, breach of express warranty, fraud/misrepresentation, breach of fiduciary duty, breach of contract implied in fact, injunctive relief, nuisance, unfair and deceptive trade practices, and a cause of action that may well not be cognizable under North Carolina law, a so-called claim for "negligence and liability imputed to the developer under the principle of master/servant liability, agency, joint enterprise, joint venture and partnership and alter ego." The nature of these claims involve subdivision development, sale of lots, and the actions of the town home owners contractor Estate Homes.

Like the Carriage Park defendants in this action, Estate Homes has also been sued by its insurer North Carolina Farm Bureau Mutual Insurance Company (hereinafter "Farm Bureau"). The town home owners are also parties defendant in that suit. Unlike this action, however, Farm Bureau has sued its insured for declaratory relief in Henderson County,[2] seeking a determination that it too is not obligated to defend against the claims asserted by the town home owners.

Having brought this action for declaratory relief under Section 2201, plaintiff herein asserts that this court has jurisdiction over this matter in accordance with 28, United States Code, Section 1332(a)(1) and (c) in that there is complete diversity between plaintiff and defendants and the amount in controversy exceeds $75,000.00.

---

The court has assumed that diversity was lacking.

Defendants argue that this court should decline to exercise its discretionary jurisdiction over this matter so that all issues may be decided by the state court. Having already filed a Rule 2.1(d), N.C. General Rules of Practice, motion with the superior court to have the primary case designated as an exceptional case and have it administered by one superior court judge, the town home owners further assert that they intend to file a second Rule 2.1(D) motion to request that all coverage cases be heard by the same superior court judge who will hear the primary case. Town home owners Brief, at ¶ 5.[3]

Plaintiff states that it has brought this action in this court because "it has a legitimate fear of bias in North Carolina state court." Plaintiff's Brief, at 3. Defendants contend that this action should be resolved in state court because the declaratory judgment action is based on state contract law, that the underlying claims in the primary action are all based on state law and may involve decisions on whether a cause of action exists under state law, there is a strong interest in resolving this action in one forum, that the decision in this case will be similar if not identical to the

---

[3] Counsel for the town home owners is advised that their brief is not in conformity with the provisions of Local Civil Rule 7.1(D). All counsel are advised that the method they employed in filing their respective briefs, i.e., filing scanned copies, results in an inability to make use of such documents in an electronic format. Counsel who plan to routinely practice in this court should become familiar with the Local Civil Rules and the optimal method for e-filing.

issues raised in the Farm Bureau action in state court, and that such overlapping issues will likely frustrate the orderly progress of all these actions.

## III. Applicable Standards

### A. Rule 12(b)(1) Standard

Rule 12(b)(1) provides for dismissal where the court lacks jurisdiction over the subject matter of the lawsuit. Lack of subject-matter jurisdiction may be raised at any time either by a litigant or the court. Mansfield, C. & L.M.R. Co. v. Swan, 111 U.S. 379, 382 (1884). The ability of the court to independently address subject-matter jurisdiction is important to finality inasmuch as a litigant, even one who remains silent on the issue of jurisdiction, may wait until they receive an adverse judgment from a district court and raise the issue of subject-matter jurisdiction for the first time on appeal, thereby voiding the judgment. Capron v. Van Noorden, 2 Cranch 126, 127, 2 L.Ed. 229 (1804). The Federal Rules of Civil Procedure anticipate this issue and provide that "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Fed.R.Civ.P. 12(h)(3).

When a court considers its subject-matter jurisdiction, the burden of proof is on the plaintiff. Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). In Richmond, Fredricksburg & Potomac R.R. Co. V. United States, 945 F.2d 765 (4th Cir. 1991)

5

(Ervin, C.J.), the Court of Appeals for the Fourth Circuit held, as follows

> In determining whether jurisdiction exists, the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment. Id.; Trentacosta v. Frontier Pacific Aircraft Indus., 813 F.2d 1553, 1558 (9th Cir.1987). The district court should apply the standard applicable to a motion for summary judgment, under which the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists. Trentacosta, supra, 813 F.2d at 1559 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323-24, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986)). The moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law. Trentacosta, supra, 813 F.2d at 1558. A district court order dismissing a case on the grounds that the undisputed facts establish a lack of subject matter jurisdiction is a legal determination subject to de novo appellate review. Revene v. Charles County Comm'rs, 882 F.2d 870, 872 (4th Cir.1989); Shultz v. Dept. of the Army, 886 F.2d 1157, 1159 (9th Cir.1989).

Id., at 768-69. Where jurisdictional facts are intertwined with facts central to the substance of a case, a court must find that jurisdiction exists and consider and resolve the jurisdictional objection as a direct attack on the merits of the case. United States v. North Carolina, 180 F.3d 574, 580 (4th Cir. 1999).

    **B.**    **Rule 12(b)(2)**

Rule 12(b)(2) provides for dismissal where the court lacks personal jurisdiction over a particular named defendant. In the Fourth Circuit, the standard for deciding a motion based on Rule 12(b)(2) was set forth in Combs v. Bakker, 886 F.2d 673, 676 (4th Cir.1989), where it explained that a plaintiff has the burden to prove personal

jurisdiction by a preponderance of the evidence. When a factual dispute arises as to whether or not jurisdiction exists, the court may either conduct an evidentiary hearing or defer ruling on the matter until it receives evidence on the jurisdictional issue at trial. Id. When a court decides the issue on the record then before it, the court may consider "the motion papers, supporting legal memoranda, affidavits, other documents, and the relevant allegations of the complaint," and the burden is plaintiff's "to make a mere *prima facie* showing of jurisdiction to survive the jurisdictional challenge." Clark v. Milam, 830 F.Supp. 316, 319 (S.D.W.Va.1993) (citations omitted). A court must resolve factual disputes in favor of the party asserting jurisdiction for the limited purpose of the *prima facie* showing. Bakker, at 676. Such resolution must include construing all relevant pleadings in a light most favorable to the plaintiff, assume the credibility of any affiant, and drawing the most favorable inferences for the existence of jurisdiction. Id.

**C.  Rule 12(b)(3)**

In accordance with Rule 12(b)(3), a court may dismiss a complaint for improper venue or transfer venue to a court where it could have been brought. 28 U.S.C. § 1406(a).

> The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

28 U.S.C. § 1406(a). When considering a motion to dismiss for improper venue, a court must accept the facts alleged in the complaint as true and must draw all reasonable inferences in the plaintiff's favor. Micromuse, Inc. v. Aprisma Management Technologies, Inc., 2005 WL 1241924, *2 (S.D.N.Y. 2005).[4]

Where as here the court's jurisdiction is founded solely on diversity of citizenship, Section 1391(a) provides that venue is only appropriate in

(1) a judicial district where any defendant resides, if all defendants reside in the same State,

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or

(3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a). The only applicable provision in this case appears to be Section 1391(a)(2), which will be discussed below.

### D.  Section 2201 Standard

The filing of a declaratory judgment action under 28, United States Code, Sections 2201-2202, does not in and of itself confer jurisdiction. Schilling v. Rogers, 363 U.S. 666, 667 (1960); Delavigne v. Delavigne, 530 F.2d 598, 601 (4th Cir.1976).

---

[4] Due to limits of electronic case filing, a copy of such unpublished opinion is incorporated into the electronic record through reference to the Westlaw citation.

Instead, a district court may entertain a declaratory judgment action before it where the claim amounts to a "case of actual controversy" within the court's diversity jurisdiction. Nautilus Ins. Co. v. Winchester Homes, Inc., 15 F.3d 371, 375 (4th Cir.1994), overruled on other grounds, Wilton v. Seven Falls Co., 515 U.S. 277 (1995). The Court of Appeals for the Fourth Circuit has held that a

> declaratory judgment action is appropriate "when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and ... when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." It should not be used "to try a controversy by piecemeal, or to try particular issues without settling the entire controversy, or to interfere with an action which has already been instituted." The Supreme Court explained that, when a related state proceeding is underway, a court considering a declaratory judgment action should specifically consider whether the controversy "can better be settled in the proceeding pending in the state court."This consideration should be guided by a number of factors, including the nature and scope of the state proceeding and "whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding...."
>
> Guided by these general principles--as well as "the same considerations of federalism, efficiency, and comity that traditionally inform a federal court's discretionary decision whether to abstain from exercising jurisdiction over state-law claims in the face of parallel litigation in the state courts"-- the Fourth Circuit has set forth a number of specific factors for district courts to consider. These include: (i) the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts; (ii) whether the issues raised in the federal action can more efficiently be resolved in the court in which the state action is pending; (iii) whether permitting the federal action to go forward would result in unnecessary "entanglement" between the federal and state court systems, because of the presence of "overlapping issues of fact or law" [; and (iv) ] whether the declaratory judgment action is being used merely as a device for "procedural

> fencing"--that is, "to provide another forum in a race for *res judicata*" or "to achiev[e] a federal hearing in a case otherwise not removable."

Centennial Life Ins. Co. v. Poston, 88 F.3d 255, 256-57 (4th Cir. 1996)(citations omitted). In Wilton, supra, the United States Supreme Court reaffirmed Brillhart v. Excess Ins. Co., 316 U.S. 491(1942), where the district court dismissed the action because of ongoing state litigation. According to the Wilton Court, the proposition in Brillhart that was reaffirmed was

> where another suit involving the same parties and presenting opportunities for ventilation of the same state law issues is pending in state court, a district court might be indulging in 'gratuitous interference,' if it permitted the federal declaratory action to proceed.

Wilton, supra, at 283 (citation omitted). The Wilton Court concluded that the district courts possess wide discretion in making these decisions holding as follows:

> [c]onsistent with the nonobligatory nature of the remedy, a district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close. In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration.

Id., at 288. The appellate court recognized that to whatever extent its decisions implied further restrictions on district court discretion in determining whether to exercise jurisdiction over Declaratory Judgment Act cases, such decisions must yield to the clear decision of the Supreme Court in Wilton. Centennial, supra, at 257-258.

**III. Discussion**

A.   **Introduction**

Clearly, this court has jurisdiction over plaintiff's claims and there simply is no basis for granting the relief defendants seek under Rules 12(b)(1), (2), & (3).  This court clearly has subject matter jurisdiction over this claim under Section 1332, thus eliminating the Rule 12(b)(1) motion. This court has jurisdiction over all of the parties making a motion under Rule 12(b)(2) unsustainable.  Finally, the Western District of North Carolina is an appropriate venue for this declaratory judgment action inasmuch as it would appear that this district is a judicial district in which: (1) any defendant resides, if all defendants reside in the same State; (2) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; and (3) any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.  28 U.S.C. § 1391(a).   Thus, the only issue before the court is whether the district court should exercise its jurisdiction by adjudicating this Declaratory Judgment Action of whether such principle should yield to considerations of practicality and wise judicial administration.  Wilton, supra.

As discussed more thoroughly above, under the Declaratory Judgment Act federal courts exercise discretion in determining whether to allow such actions to proceed even though the suit otherwise satisfies the requirements of federal subject

matter jurisdiction. Id., at 282; Aetna Casualty and Surety v. Alpha Mechanical, Inc., 9 F.Supp.2d 585, 587 (W.D.N.C. 1998). "[A] district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment before trial…." Wilton, supra, at 288. When deciding whether to allow the continuation of a federal action which parallels a state court proceeding, courts consider "whether the controversy can better be settled in the proceeding pending in the state court." Centennial Life Insurance Company v. Poston, 88 F.3d 255, 256 (4th Cir. 1996). The overriding concern is whether "the claims of all parties in interest can satisfactorily be adjudicated in [the state court] proceeding…." Wilton, supra, at 283. The Supreme Court has specifically cautioned and reaffirmed that where there is

> another suit involving the same parties and presenting opportunity for ventilation of the same state law issues is pending in state court, a district court might be indulging in 'gratuitous interference' if it permitted the federal declaratory action to proceed.

Id. (citation omitted).

Without limiting the discretion of the district court, Centennial, supra, this inquiry is aided by consideration of a number of specific factors. See Nautilus Ins. Co. v. Winchester Homes, Inc., 15 F.3d 371, 376 (4th Cir. 1994). These factors include:

(1) the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts;

(2) whether the issues raised in the federal actions can more efficiently be resolved in the court in which the state action is

>    pending;
>
> (3) whether permitting the federal action to go forward would result in unnecessary entanglement between the federal and state court systems, because of the presence of overlapping issues of fact or law; and
>
> (4) whether the declaratory judgment action is being used merely as a device for procedural fencing—that is, to provide another forum in a race for *res judicata* or to achieve a federal hearing in a case otherwise not removable.

Id., at 257 (citations and corresponding quotation marks omitted). The undersigned will consider each factor *seriatim*.

### B. The First Factor: North Carolina's Interest in the Subject Matter of this Declaratory Judgment Action.

The first factor to consider is the forum state's interest in the subject matter of the declaratory judgment action pending in federal court, which is whether a contract of insurance provides coverage to insureds located and domiciled within the State of North Carolina. North Carolina has made clear its interest in such insurance policies:

> Generally, an insurance contract "is subject" to the law of the state where the contract was entered. All contracts of insurance on "property, lives, or interests" that have a close connection with North Carolina are deemed to have been entered in this state.

Fortune Ins. Co. v. Owens, 132 N.C.App. 489, 492 (N.C. App.1999)(citations omitted).

### C. The Second and Third Factors: Judicial Efficiency and Court Entanglement.

As the discussion in the background portion of this Recommendation may indicate, consideration of whether the policy issued requires plaintiff to defend the state court action will require review of a number of complaints and possible cross claims, all of which are now pending in the courts of the State of North Carolina and may from time-to-time be amended. Thus, it is conceivable that even if this court were to promptly enter a decision on the Declaratory Judgment Action, it could be called on to revisit such decision as the state case evolved through discovery and any amendments to the pleadings. While the scope of coverage is certainly important, it appears to be at most a collateral issue capable of resolution in the ordinary course of the North Carolina dispute. Further, it would appear that another nearly identical action seeking declaratory judgment has been filed by another insurer, Farm Bureau, which will require the state court to determine whether that policy applies to whatever claims are then before the state court. Further, it would appear that motions are being filed to have not only the primary case heard by one superior court judge, but to have the collateral matters concerning coverage heard by the same judge.

Thus, this action can only dispose of one collateral issue, while the collective actions in state court appear positioned to dispose of all issues between all interested parties, including the scope of coverage as to another policy issued to the builder.

Further, it appears that this action comes well after the primary action and its antecedent was filed in state court

The primary concern expressed in Nautilus is not the timing of actions, but as to whether courts are being asked to decide issues *ad hoc*. Efficiency is not synonymous with speed. The court believes that in the context of Nautilus, which is further illuminated by both Wilton and Brillhart, efficiency means the efficient use of all court resources, which common sense would counsel against two courts gearing up to resolve what are likely to be identical issues stemming from the same operative facts. Piecemeal litigation is particularly draining on scarce judicial resources. The Honorable Lacy H. Thornburg, United States District Judge, held in Hartford Casualty Insurance Company v. BB&T Financial Corporation, 131 F. Supp.2d 752 (W.D.N.C 2001), as follows:

> [t]he second and third [Nautilus] factors, along with the prohibition against trying a controversy by piecemeal, are particularly salient. While it is true that this Court could efficiently adjudicate the rights and responsibilities between [the parties to this action], the rights of all of the parties involved in the underlying dispute can be resolved in the single action now pending in South Carolina state court.

Hartford, supra, at 755 (emphasis deleted). The district court further found that such was especially compelling where there were policies that would have to be addressed by the state court in any event;

the South Carolina action would nonetheless have to continue to

> determine the rights of the other parties. By staying this proceeding, the Court can avoid unnecessary entanglement of the State and Federal courts in this matter. Judicial resources—arguably in each system—would be most efficiently allocated by allowing the South Carolina state court the opportunity to determine the respective obligations of all of the insurers with potential liability stemming from the [association's] lawsuit.

Id. Indeed, the entry of a declaratory judgment in this case would likely not be the end of the federal action inasmuch as appeal is always a possibility, which would bring yet another court - - this time in Richmond, Virginia - - to bear on an action that concerns construction in Henderson County. Considerations of judicial economy, efficiency and federalism weigh against this court's resolution of the this action during the pendency of the South Carolina proceeding.

### D. The Fourth Factor: the Race for *Res Judicata*.

The fourth factor requires consideration of whether the declaratory judgment action is being used merely as a device for procedural fencing—that is, to provide another forum in a race for *res judicata* or to achieve a federal hearing in a case otherwise not removable. Unlike intellectual property litigation, where the race to the courthouse is paramount, Genentech, Inc. v. Eli Lilly and Co., 27 U.S.P.Q.2d 1241 (Fed. Cir. 1993), abrogated on different grounds, Wilton, supra, little significance is given to this fact even where the federal declaratory judgment action was filed prior to parallel state declaratory action. Centennial, supra, at 258 ("although the federal

16

action was filed first, we decline to place undue significance on the race to the courthouse door...."). Any significance to either the Farm Bureau action or this action being first filed is diminished by the fact that the core litigation was well underway in another forum. See Hartford, at 754.

E.  Conclusion

The filing of this action was perfectly reasonable and understandable inasmuch as plaintiff has a real interest in a determination of whether they have any duty in regard to damages allegedly purported caused by Carriage Park. The plaintiff has, however, not pointed the court to any impending deadline, such as a statute of limitations issue, that would prevent them from either filing a declaratory judgment claim in state court or any concern that the state court will not promptly reach the issue. While plaintiff argues that it has filed this action to avoid bias directed to an out-of-state litigant in state court, the court is unmoved by this argument inasmuch as a declaratory judgment action is an issue for resolution by the superior court, which is uniquely qualified to determine whether a contract governed by state law provides coverage.

In considering the motions to dismiss, however, the undersigned has had to fight against its natural instinct, which is to decide the matter and close this case. Indeed, such a decision would have been much simpler and straight forward as it

would involve the calculus of contract interpretation, rather than the nuances of discretion involved in dismissal . While plaintiff has presented an excellent brief, the court simply cannot discount the rationale of the Supreme Court, the Court of Appeals for the Fourth Circuit, and Honorable Lacy H. Thornburg, all of whom have relied upon considerations of practicality and wise judicial administration. Under the Nautilus factors, it is not a question of whether a court "can" resolve an issue but, rather, a question of whether it "should." The greater interests in comity, deference, and economy require this court to dismiss and allow the honorable courts of the State of North Carolina to resolve this question in context with a nearly identical issue of contract interpretation and with issues concerning the primary complaint and whether causes of action have been stated.

## RECOMMENDATION

**IT IS, THEREFORE, RESPECTFULLY RECOMMENDED** that defendants motions to dismiss (contained in docket entries #5 and #8) be **ALLOWED** and that this action be dismissed without prejudice.

The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(C), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **ten (10)** days of service of same. Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985), <u>reh'g denied</u>, 474 U.S. 1111 (1986); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir.), <u>cert</u>. <u>denied</u>, 467 U.S. 1208 (1984).

Signed: November 14, 2008

_____
Dennis L. Howell
United States Magistrate Judge